LIND, Respondent, vs. ALLEN, Appellant.

*December 6, 1955—January 10, 1956.*

492

For the appellant there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Tomah, and oral argument by *Victor H. Breitenfield.*

For the respondent there was a brief by *Lawrence S. Clark* of Tomah, and *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Ernest O. Hanson.*

FAIRCHILD, C. J. As far as the result in this appeal is concerned, it must be based on the legal character of the contract entered into by respondent with appellant and its obligation.

Appellant contends that the principal issue in this case is whether the defect in the barn was caused by defective workmanship, and that therefore findings should have been made, among others, that the "sagging roof, bulging walls, and other defective conditions were due to respondent's failure to perform his work as a carpenter in a good and workmanlike manner," and that "the plaintiff failed to exercise the skill and ability which respondent represented that he possessed."

Appellant pleads a counterclaim and seeks to show that there was unworkmanlike conduct on the part of the respondent, and that such conduct caused the sag in the barn. As to this, appellant has the burden of proof, and this he fails to meet. The three probable sources of weakness shown by the evidence are: (1) Poor quality of lumber; (2) placing of rafters too far apart; (3) lack of material for supporting beams or braces.

With respect to the quality of the lumber, Lyle Richmond, one of the workmen, testified that "Mr. Lind objected to certain material. The nature of the objection was that I threw away a lot of boards that I didn't think were fit for rafters at first, but we had to use those anyway before we were done." Mr. Lind testified to the same effect that "There was some poor lumber used, here and there and all over, in the roof boards and some of it in the last rafters we made. Toward the last end he had a lot of punky lumber. It was rotten, punky elm lumber, drop a hammer on it and it would go right through." As to the rafters, the appellant admitted that "Lind wanted to put the rafters three feet apart, but I said, 'No, we can't put them three feet apart. I have eight-foot lumber. I will waste too much.' Then he said four feet." With respect to the beams, the testimony of Martin Lind was that when the driveway was being cut he asked appellant for 2 x 4 24-foot beams, but Allen refused on the ground that he couldn't afford it.

If the sagging of the barn arose from any of the above sources or a combination of them, the fault can be attributed only to the appellant, who planned the barn and insisted on the carrying out of his plans in accordance with the materials which he had on hand. The evidence shows that the appellant was present at various and numerous times during the construction of the building. He testified: "I was present while the barn was being constructed one week and maybe two or

three days. I also was there when they put up the rafters. I had a raising bee for that and some guys helped us. I was there the last day Lind worked." He was asked: "You saw their work at the end of each day?" and he answered, "Yes." Lyle Richmond also testified that at nighttime Mr. Allen discussed matters with Mr. Lind, what he wanted done. The respondent did exactly as directed by appellant, and there is no question but that the appellant was supervising the actual construction of the barn.

The respondent's claim is for compensation for work and services under a master-and-servant relationship. No length of time was fixed. Either party could sever the relation at any time, and the arrangement of hire contained no warranty as claimed by appellant. The testimony shows that the status of the respondent was that of a carpenter working for the appellant at the rate of $1.25 per hour. The following testimony was given by the appellant Allen:

"*Q*. He was working by the hour for you? *A*. Yes, that is the way they got paid.

"*Q*. And you could have left him go any time you wanted to? *A*. Yes.

"*Q*. But you didn't? *A*. No."

Respondent's duty was to perform the task he was hired to do, and under the facts established that duty cannot be enlarged into a guarantee that he would construct a roof without a sag. Appellant has failed to point out any instance of poor workmanship on the part of respondent. The appellant selected the plan, directed the work, and furnished the materials. He cannot recover for a defect in the barn for which respondent is not responsible.

The trial court found, among other things, that the respondent was hired "to do carpenter work in the construction of a barn upon the defendant's premises . . . at the rate of $1.25 per hour and the defendant hired other workmen who

were paid varying rates or were working without charge on an exchange-of-work basis with the defendant and among the others employed was one Lyle Richmond at $1 per hour and the minor son of plaintiff, Allen Lind, at 75¢ per hour. That defendant refused to pay the plaintiff, Lyle Richmond, who worked with the plaintiff and the son, . . . but that defendant did pay other workmen hired by him whether in money or in exchange work. That the barn was erected by lumber and materials furnished by the defendant." Such findings are sustained by the evidence and warrant the conclusion that: "There was no agreement as to the length of time of employment of the plaintiff, of Lyle Richmond, or of the minor son, Allen Lind, nor was there a warranty as to the quality of the work to be performed by him."

As there was no warranty, the cause of the sag and the requested findings pertaining thereto were immaterial to the determination of the case. It appearing that it was not probable that the substantial rights of the appellant have been affected, the order was properly denied, and the judgment must be affirmed.

*By the Court.*—Judgment and order affirmed.